```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
MUSTAFA AKKAYA and IBRAHIM
HAKKI AKKAYA,                                          MEMORANDUM AND ORDER
                                                       23-CV-6119 (RPK) (SIL)
                        Plaintiffs,

        v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS);
ALEJANDRO MAYORKAS, Secretary of
the Department of Homeland Security; UR
M. JADDOU, Director of USCIS; and
USCIS LONG ISLAND FIELD OFFICE,

                        Defendants.
----------------------------------------------------x
```

RACHEL P. KOVNER, United States District Judge:

U.S. Citizenship and Immigration Services ("USCIS") denied a petition for preferential immigration status that plaintiff Ibrahim Akkaya filed on behalf of his father, plaintiff Mustafa Akkaya, because it determined that Mustafa Akkaya had previously entered a sham marriage for the purpose of obtaining an immigration benefit. Plaintiffs filed this lawsuit challenging that decision, and the parties have filed cross-motions for summary judgment. As explained below, defendants' motion is granted, and plaintiffs' motion is denied, because USCIS did not act arbitrarily or capriciously in denying plaintiffs' petition.

## BACKGROUND

The following facts are drawn from the certified administrative record unless otherwise noted.

1

### 1. Immigration, Marriages, and Initial Immigration Petitions

Plaintiff Mustafa Akkaya, a citizen of Turkey, entered the United States in 1991. Administrative Record ("AR") 123 (Dkt. #15). Mustafa Akkaya divorced his wife, Munevver Akkaya, on December 23, 1996, AR 94–99, 138–140, and on April 14, 1997, he married Tiffany Turner, AR 136. In 1998, plaintiff Ibrahim Akkaya was born to Mustafa and Munevver Akkaya. AR 71–72, 84.

In September 1998, Turner submitted an I-130 petition for "immediate relative" status on behalf of Mustafa Akkaya. AR 122–27. An I-130 petition permits a U.S. citizen to seek preferential immigration status on behalf of an alien spouse or close relative. 8 U.S.C. § 1154(a)(1)(A)(i). Mustafa Akkaya also submitted an I-485 application to adjust his immigration status. AR 122–27. Turner's and Mustafa Akkaya's submissions indicated that they lived at the same address. AR 123.

In May 2001, Mustafa Akkaya and Turner submitted a joint letter withdrawing the I-130 and I-485 applications. AR 110. Mustafa Akkaya and Turner divorced in October 2001. AR 92–93. Mustafa Akkaya then remarried Munevver in January 2002. AR 67, 75.

In August 2004, Turner provided a sworn statement to an Immigration and Customs Enforcement officer stating that her marriage to Akkaya had been fraudulent. She stated that "a friend named Julie" had "asked if [she] was interested in marrying a Turkish guy so he could get immigration status." AR 100 (capitalization altered). According to Turner, she was "offered $5,000 to marry Mustafa Akkaya," and was ultimately paid $800. *Ibid.* (capitalization altered). She stated that she "never lived with [Mustafa Akkaya], and it was never a real marr[ia]ge." *Ibid.*

Turner passed away on February 1, 2017. AR 40. Her death certificate listed her as "Never Married." *Ibid.*

2

### 2. 2019 Immigration Petitions

Ibrahim Akkaya filed an I-130 petition on behalf of his father on June 10, 2019, requesting that Mustafa be classified as his immediate relative. AR 11, 26. Mustafa Akkaya submitted an I-485 application that same day. AR 22. USCIS interviewed Mustafa Akkaya on January 31, 2020. AR 67–68. During the interview, he told immigration officials that he had lived with Turner for about a year and that he did not pay Turner to marry him. *Ibid.* He described himself as having been married "three times," with his first and third marriage to Munevver Akkaya, and his second marriage to Turner. AR 67.

On March 5, 2020, USCIS issued a notice of intent to deny the I-130 based on a provision of the Immigration and Nationality Act ("INA") that prohibits the agency from granting an I-130 petition concerning an alien who previously entered a sham marriage for the purpose of obtaining an immigration benefit. *See* 8 U.S.C. § 1154(c); AR 63–66. The agency stated that it had not received any evidence that Mustafa Akkaya ever resided with Turner; that "[t]here was also no evidence provided to show that the spouses held themselves out to family and friends as husband and wife"; and that the agency had a "detailed sworn statement where Tiffany Turner described the fact that Mustafa Akkaya has offered and paid money to her to enter into a legal marriage to obtain [an] immigration benefit." AR 65 (capitalization altered). It also noted Mustafa Akkaya's statement that he had been married to Munevver Akkaya, then Turner, and then Munevver Akkaya again. AR 66. While Akkaya had denied that the marriage was fraudulent in his USCIS interview, AR 65, the agency stated that it appeared based on "the totality of the evidence, including the lack of documentary evidence and testimony at interview," that Mustafa Akkaya had entered into his marriage to Turner for the purpose of evading immigration law. AR 66.

3

USCIS provided thirty days to submit rebuttal evidence. *Ibid.* The agency received several submissions in response. *See* AR 27–28. An unsworn statement by Mustafa Akkaya stated that although he and Turner had "lived together less than 2 years, [their] marriage was in good faith." AR 38. Mustafa Akkaya added that the two had "dated for about a year before [they] moved in together," and that the relationship had deteriorated because Turner used drugs. *Ibid.*

The agency also received Mustafa Akkaya's tax returns from 1996–1999, including joint returns filed by himself and Turner in 1997 and 1999 that listed a single home address. AR 42–62. In addition, the agency received a 2017 death certificate for Turner, with "never married" listed as the marital status. AR 27, 40. Mustafa Akkaya's unsworn statement added that he did "not have bank or phone records or utility bills from 20 years" ago, and that while he was "trying to get a supporting affidavit from people who knew [them] at that time, . . . even this is difficult 20 years later." AR 39.

USCIS denied the I-130 application in June 2020 based on the INA's marriage-fraud bar, AR 26–33, and it denied the I-485 application based on the I-130 denial, AR 22–25. The agency's denial of the I-130 petition again described the facts suggesting fraud, including Turner's statement, that "no evidence was provided to show that Mustafa Akkaya resided with Tiffany Turner," and that "[t]here was also no evidence provided to show that the spouses held themselves out to family and friends as husband and wife." AR 28 (capitalization altered). In addition, it observed that Mustafa Akkaya had a child born in 1998 "with his ex-wife Munevver Akkaya at the time of being married to Tiffany Turner," and that he later remarried Munevver Akkaya." *Ibid.* (capitalization altered).

The agency noted that when the record contains evidence that a "beneficiary married a United States citizen . . . to evade immigration laws, the burden then shifts . . . to the petitioner to

4

establish that the beneficiary did not seek an immigration benefit based on a prior fraudulent marriage." *Ibid.* Here, USCIS stated, the agency had notified the petitioner of the information indicating that Mustafa Akkaya had engaged in marriage fraud and provided an opportunity to rebut that conclusion. But the petitioner "ha[d] not overcome the grounds set forth in [the agency's] notice." *Ibid.* As a result, the notice stated, the agency "independently conclude[d] that [Mustafa Akkaya's] prior marriage to Tiffany Turner was entered into for the sole purpose of obtaining immigration benefits" based on "substantial and probative evidence and not merely on reasonable inferences." *Ibid.* Plaintiffs appealed to the Board of Immigration Appeals, but the appeal was denied as procedurally defective. AR 1–21.

### 3. Plaintiffs' Lawsuit

Plaintiffs filed this lawsuit contending that the agency acted arbitrarily and capriciously, in violation of the Administrative Procedure Act ("APA"), when it denied their applications based on the marriage-fraud bar.

Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, for summary judgment. *See* Defs.' Mot. Summ. J. (Dkt. #22). They argue that the agency did not act arbitrarily or capriciously in determining that the agency was barred from granting an adjustment of status to Mustafa Akkaya based on the INA's marriage-fraud provision. Plaintiffs have cross-moved for summary judgment. *See* Pls.' Mot. Summ. J. (Dkt. #23-1). They contend that USCIS's actions were arbitrary and capricious because the agency lacked substantial and probative evidence of marriage fraud, and because the agency failed to credit the evidence that Mustafa Akkaya submitted to rebut the marriage-fraud claim.

5

## STANDARD OF REVIEW

Under the APA, agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Federal district courts generally have jurisdiction to review the denial of I-130 petitions. *See Ruiz v. Mukasey*, 552 F.3d 269, 273–76 (2d Cir. 2009).

The scope of review under the arbitrary and capricious standard is "narrow and deferential." *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (citation omitted). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ibid.* (citation omitted). "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007).

When a party challenges agency action under the APA, the district court acts as an "appellate tribunal," and the case on review presents "a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see, e.g.*, *N.Y. Legal Assistance Grp. v. DeVos*, 527 F. Supp. 3d 593, 599 (S.D.N.Y. 2021) (applying *Thompson* rule). Summary judgment is generally an appropriate procedural vehicle to resolve such a case, *see Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020); *Clifford v. U.S. Coast Guard*, 915 F. Supp. 2d 299, 307 (E.D.N.Y.) ("[T]he Second Circuit has allowed appeals of agency decisions to be styled

as motions for summary judgment."), *aff'd*, 548 F. App'x 23 (2d Cir. 2013), but "the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply," *Seife v. U.S. Dep't of Health & Hum. Servs.*, 440 F. Supp. 3d 254, 271 (S.D.N.Y. 2020) (citation omitted). Instead, the court decides the legal issue of whether the agency's action was arbitrary and capricious, 5 U.S.C. § 706(2)(A), by reviewing "the administrative record compiled by that agency when it made the decision," *Clifford*, 915 F. Supp. 2d at 307 (quoting *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)); *accord Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. United States*, 489 F. Supp. 3d 106, 128 (E.D.N.Y. 2020) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995)); *Pandya v. Jaddou*, 581 F. Supp. 3d 476, 480 (E.D.N.Y. 2022).

## DISCUSSION

Defendants' motion for summary judgment is granted, and plaintiffs' cross-motion is denied, because USCIS's decision to deny plaintiffs' I-130 petition was not arbitrary or capricious.

In denying plaintiffs' I-130 petition, USCIS explained that its decision was based on 8 U.S.C. § 1154(c), the "sham-marriage bar." *Bouarfa v. Mayorkas*, No. 23-583, 2024 WL 5048700, at *3 (U.S. Dec. 10, 2024). Under that provision, the agency may not approve an I-130 petition for a beneficiary who previously sought status through "a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c); *accord Singh v. Bd. of Immigr. Appeals*, 724 F. App'x 36, 37 (2d Cir. 2018). The Attorney General's "finding of a fraudulent marriage must be supported by 'substantial and probative' evidence 'documented in the alien's file.'" *Joseph F. Risoli, P.E., LLC v. Nielsen*, 734 F. App'x 61, 62 (2d Cir. 2018) (quoting *Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (B.I.A. 1990)). Under this standard, "the evidence must establish that it is more than probably true that the

7

marriage is fraudulent"—a standard "higher than a preponderance of the evidence and closer to clear and convincing evidence." *Matter of P. Singh*, 27 I. & N. Dec. 598, 607 (B.I.A. 2019). If substantial and probative evidence of fraud exists, then the burden shifts to the petitioner to rebut the evidence of fraud. *Singh*, 724 F. App'x at 38 (citing *Matter of Kahy*, 19 I. & N. Dec. 803, 806–07 (B.I.A. 1988)). Rebuttal evidence may include "proof that the beneficiary of the visa petition has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." *Risoli*, 734 F. App'x at 63 (brackets and quotation marks omitted) (quoting *In re Riero*, 24 I. & N. Dec. 267, 269 (B.I.A. 2007)).

The administrative record supports USCIS's finding that substantial and probative evidence indicated marriage fraud. Most notably, Turner made a sworn statement to immigration authorities that she was offered money to marry Mustafa Akkaya so he could obtain an immigration benefit, that she had never lived with him, and that her marriage to him was not a genuine marriage. AR 100. USCIS also noted an absence of evidence that Mustafa Akkaya and Turner held themselves out as husband and wife or lived together. *See* AR 26–29. These facts together provided substantial and probative evidence that Mustafa Akkaya had entered a sham marriage for the purpose of an immigration benefit. *See, e.g.*, *Bourisquot v. Holder*, 569 F. App'x 35, 36 (2d Cir. 2014) (finding substantial and probative evidence of marriage fraud when former husband stated in a sworn statement that marriage was not *bona fide*); *see also Singh*, 724 F. App'x at 38–39 (same, even in the absence of a statement directly attesting to fraud, based on "a wealth of inconsistencies" between the statements of purported spouses, and "a conspicuous lack of documentary evidence" that the couple had lived together and shared resources). While plaintiffs attack Turner's affidavit as inadequately detailed, "the agency has significant discretion over the

8

weight to be afforded to the evidence before it," *Singh*, 724 F. App'x at 39, and the agency could rationally credit Turner's sworn affidavit over Mustafa Akkaya's self-serving denial, even though, as plaintiffs note, Turner's affidavit did not contain details about the identity of the individual who approached Turner about marrying Akkaya and about who ultimately paid her. *See* Pls.' Mot. Summ. J. 12–13.

The administrative record also supports USCIS's determination that the applicant failed to rebut the evidence of marriage fraud. As evidence of a legitimate marriage, USCIS received tax returns for 1996 to 1999, some of which listed Mustafa Akkaya and Turner as filing jointly and having the same address. USCIS also received a statement by Mustafa Akkaya denying any marriage fraud, stating that his marriage to Turner had broken down because of her drug use, and explaining that he was unable to provide "bank or phone records or utility bills from 20 years" ago and was "trying to get a supporting affidavit from people who knew us at that time" but that doing so was "difficult 20 years later." AR 39. Finally, USCIS received Turner's death certificate, listing a date in 2017 and a marital status of "never married."

As evidence of a *bona fide* marriage, these submissions are far from compelling. Beyond tax returns for several years listing the same address and Mustafa Akkaya's self-serving statements, plaintiffs provided no evidence of a shared residence. And the submissions are entirely bereft of evidence (beyond Mustafa Akkaya's own account) of a "courtship" or "wedding ceremony," shared "experiences," or "regular visits or contact." *Risoli*, 734 F. App'x at 63 (quoting *In re Riero*, 24 I. & N. Dec. at 269). Nor did plaintiffs submit "joint bank account statements" or "joint bills," or otherwise establish that Turner was listed as Mustafa Akkaya's spouse on leases or insurance policies. *Ibid.* Given the evidence of fraud—including Turner's sworn statement—and "the weakness of [plaintiffs'] rebuttal evidence," the agency's finding that

9

Mustafa Akkaya entered a fraudulent marriage was supported by substantial and probative evidence, and the denial of the I-130 petition was not arbitrary or capricious. *Ibid.*; *see Koffi v. Holder*, 487 F. App'x 658, 660 n.1 (2d Cir. 2012) (agency did not act arbitrarily and capriciously in finding marriage fraud, despite shared financial accounts, when "record contain[ed] not a single affidavit from a neighbor, friend, or acquaintance evincing a wedding ceremony or shared activities and experiences, as might be expected when couples enter into bona fide marriages").

While plaintiffs note that the agency's denial of the I-130 petition contains several arguable misdescriptions, those errors are harmless when the record is viewed as a whole. When an agency's decision contains an error, the Court need not remand when it "can state with confidence that the [agency decisionmaker] would adhere to [its] decision if [the Court] were to remand." *Ajdin v. Bureau of Citizenship & Immigr. Servs.*, 437 F.3d 261, 266 (2d Cir. 2006) (per curiam) (quoting *Xiao Ji Chen v. U.S. Dep't of Just.*, 434 F.3d 144, 158 (2d Cir. 2006)); *see* 5 U.S.C. § 706 (directing that "due account shall be taken of the rule of prejudicial error" in APA review).

Here, plaintiffs challenge as inaccurate the district director's statement in denying the instant I-130 petition that there was "no evidence" that Turner and Mustafa Akkaya lived together in a shared residence. *See* AR 13. In plaintiffs' view, there was in fact some evidence—the tax filings listing a shared address for Turner and Mustafa Akkaya, the I-130 application filed by Turner, which stated that she and Akkaya lived together, and Mustafa Akkaya's statement about his marriage to Turner. Pls.' Mot. Summ. J. 16. But even if "no evidence" is an overstatement, the error is harmless because the record makes clear that the decisionmaker considered the materials in question and simply did not find them persuasive. In finding that the sham-marriage bar applied to Mustafa Akkaya, the district director specifically mentioned that the agency had reviewed the submitted tax forms that the director noted were marked "MARRIED filing jointly"

10

and listed a shared address for Turner and Mustafa Akkaya. *See* AR 27–28. The district director's decision also expressly recognized that Turner had "filed [a] Form I-130 seeking to classify Mustafa Akkaya as the spouse of a US citizen," AR 28 (capitalization altered), and that Mustafa Akkaya had submitted a statement to the agency about his marriage, AR 27. Because the district director thus made plain that the agency had considered the tax returns, Turner's I-130 application on behalf of Mustafa Akkaya, and Mustafa Akkaya's statement, the Court can "state with confidence" that remand to consider those documents would not result in a different decision. *Ajdin*, 437 F.3d at 266 (citation omitted).

Similarly, while plaintiffs fault the agency for stating that Turner claimed to have been paid by Mustafa Akkaya, Pls.' Mot. Summ. J. 4, when Turner in fact stated that she had been paid to marry Akkaya without stating who had made the payment, AR 100, that misdescription is harmless because it is immaterial. It is irrelevant to the application of the marriage-fraud bar whether Turner was paid directly by Mustafa Akkaya or by someone else. Accordingly, the Court can say with confidence that a remand based on that misdescription would not result in a different result.

Finally, plaintiffs are not entitled to relief because the district director mentioned in the agency's denial notice that Ibrahim Akkaya had been born to Mustafa and Munevver Akkaya while Mustafa was married to Turner. Under 8 C.F.R. § 103.2(b)(8)(iv), an agency's "notice of intent to deny" must "specify . . . the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." Here, the agency's notice of intent mentioned several pieces of evidence suggesting fraud—including Turner's sworn statement and Mustafa Akkaya's prior and subsequent marriages to Munevver Akkaya—but it did not mention the circumstances of Ibrahim Akkaya's birth. *See* AR 35–37. Accordingly, the agency

11

may have erred in mentioning this birth in its denial decision in the section discussing the reasons for denying the I-130 petition.

"Where the agency fails to follow its own regulations," the Court "will remand to invalidate the challenged proceeding only where the alien demonstrates 'prejudice to the rights sought to be protected by the subject regulation,' or where the 'regulation at issue is promulgated to protect a fundamental right derived from the Constitution or a federal statute.'" *Nolasco v. Holder*, 637 F.3d 159, 163 (2d Cir. 2011) (per curiam) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)) (brackets omitted). Here, plaintiffs' papers can be read to suggest that they suffered prejudice because Mustafa Akkaya "was never asked about this supposed derogatory information" and therefore "was never provided an opportunity to explain that fact." [Pls.' Mot. Summ. J. 16]

But plaintiffs fail to demonstrate the requisite prejudice because they "do[] not identify any different or additional argument that [they] would have made" to the agency had the original notice mentioned Ibrahim Akkaya's birth. *Ledesma v. Holder*, 450 F. App'x 51, 53 (2d Cir. 2011); *see Nolasco*, 637 F.3d at 165 (declining to remand when there was "no evidence" of an "adverse effect on Petitioner's ability to answer the Government's charges"). Further, the agency's decision makes clear that remand would not lead to a different outcome because it explicitly states that petitioners had not rebutted the grounds in the original notice. *See* AR 28 (stating that "[y]ou have not overcome the grounds set forth in our notice," and that "[i]n response to our notice, you have not submitted relevant, probative and credible evidence to establish that the beneficiary's prior marriage was not entered into for immigration purposes"). And the strength of the evidence in the original notice—including Turner's sworn statement—reinforces that the agency's decision did not turn on the inclusion of the additional fact regarding Ibrahim Akkaya's birth. *See Xiao Ji Chen*, 434 F.3d at 162 (directing courts to consider "the strength of the error-free portion" of the agency

12

decision in determining whether remand would be futile). Accordingly, the Court declines to remand this case for a new decision based on the decision letter's mention of Ibrahim Akkaya's birth.[*]

## CONCLUSION

For the foregoing reasons, defendants' summary judgment motion is granted, and plaintiffs' summary judgment motion is denied.

SO ORDERED.

                                                             /s/ Rachel Kovner
                                                             RACHEL P. KOVNER
                                                             United States District Judge

Dated: February 3, 2025
       Brooklyn, New York

---

[*] Plaintiffs have never made, and have therefore forfeited, an argument that the agency's failure to follow 8 C.F.R. § 103.2(b)(8)(iv) implicates a fundamental right derived from the Constitution or a federal statute. *See, e.g.*, *Reid v. Garland*, 120 F.4th 1127, 1147 (2d Cir. 2024) (stating that showing of prejudice is not required "[w]here . . . a respondent claims that an agency 'has failed to adhere to its own regulations regarding a fundamental right derived from the Constitution or a federal statute'") (brackets omitted); *Ledesma*, 450 F. App'x at 53 (plaintiff not entitled to relief based on BIA's non-compliance with regulation when plaintiff failed to "*demonstrate* 'prejudice to the rights sought to by protected by the subject regulation,' or the regulation's promulgation 'to protect a fundamental right derived from the Constitution or a federal statute'") (emphasis added) (citation omitted).